**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNION OF NEEDLETRADES, INDUSTRIAL AND TEXTILE EMPLOYEES AFL-CIO, et al.,** | : | **Case No. 2:03-cv-1000** |
| **Plaintiffs,** | : | **Judge Holschuh** |
| v. | : | **Magistrate Judge Kemp** |
| **AMERICAN CAPITAL STRATEGIES, LTD., et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Union of Needletrades, Industrial and Textile Employees AFL-CIO and its Locals 487T and 1925 ("Plaintiffs") sued Defendants American Capital Strategies, Ltd. and LaSalle National Bank Association for their alleged interference with Plaintiffs' contractual relationship with Decorative Surfaces International, Inc ("DSI"). This matter is before the Court on Defendant LaSalle National Bank Association's ("Defendant") Motion for Reconsideration or, Alternatively, to Certify. (doc. # 108.) For the following reasons, Defendant's Motion is **DENIED**.

**I.      Background**

The case's factual background is fully set forth in the Court's March 27, 2008 Memorandum Opinion and Order ("the Opinion"), which granted summary judgment to American Capital Strategies, Ltd. but denied summary judgment to Defendant. (doc. # 105.) In the Opinion, the Court first held that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, did not preempt Plaintiffs' state law claim for intentional interference with a contract.[1] (p. 20, doc. #105.) The Court

---

[1] The Court had previously dismissed Plaintiffs' federal claim as untimely (Memorandum and Order, Feb. 22, 2005, doc. # 42), and Plaintiffs' state law claim is the only remaining claim.

found that, although Sixth Circuit case law on § 301 preemption of Ohio intentional interference with a contract claims was somewhat unclear, in this particular case there was no § 301 preemption because the Court did not have to interpret the terms of the collective bargaining agreement at issue, the Plant Closing Agreement ("PCA"), to resolve Plaintiffs' state law claim. (Id.) Specifically, the Court found that there was no real dispute as to a breach of the terms of the PCA and relied on Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988) and DeCoe v. General Motors Corp., 32 F.3d 212 (6th Cir. 1994) for the principle that § 301 preemption is only warranted when the meaning and interpretation of a collective bargaining agreement is disputed. (Mem. Op. & Order p. 20, doc. # 105.)

Second, the Court addressed the merits of Plaintiffs' claim. The Court granted summary judgment to American Capital Strategies, Ltd. because Plaintiffs could not identify any conduct on behalf of American Captial Strategies, Ltd. that induced or caused a breach of the PCA. (Id. p. 25-26.) The Court found that Plaintiffs had, however, identified conduct on Defendant's behalf that a jury could reasonably conclude had caused a breach of the PCA. The Court further found that genuine issues of material fact existed as to whether Defendant's conduct was justified, and thus denied summary judgment to Defendant. The Court relied on In re Knickerbocker, 827 F.2d 281 (8th Cir. 1987) for this conclusion.

On April 15, 2008 Defendant moved for reconsideration of the Opinion or, alternatively, to certify the Opinion for an interlocutory appeal. (doc. # 108.) Plaintiffs responded on May 20, 2008 (doc. # 117), and Defendant replied on June 6, 2008 (doc. # 120.) These issues are now ripe for adjudication.

**II.     Motion for Reconsideration**

### A. Applicable Legal Standard

Both Plaintiffs and Defendant direct the Court to Federal Rule of Civil Procedure 59(e) and case law interpreting that Rule, which governs motions to alter or amend a final judgment. The Opinion, however, was an interlocutory order, not a final judgment, see Pacific Union Conference of Seventh-Day Adventists v. Marshall, 434 U.S. 1305, 1306 (1977), and as such is governed by Rule 54(b).

"District courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." Rodriguez v. Tennessee Laborers Health & Welfare Fund, 89 F.App'x. 949, 959 (6th Cir. 2004) (unpublished). Rule 54(b), in pertinent part, states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and the parties' rights and liabilities.

FED.R.CIV.P. 54(b). Additionally, "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted).

The Court has "significant discretion" in considering a motion to reconsider an interlocutory order. Rodriguez, 89 F.App'x. at 959 n.7. Motions for reconsideration are not intended to be utilized to re-litigate issues previously considered. Macdermid Inc. v. Electrochemicals Inc., 142 F.3d 435 (Table), 1998 WL 165137, * 6 n.7 (6th Cir. 1998) (unpublished). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent

3

manifest injustice." Rodriguez, 89 F.App'x. at 959.

    **B.    Analysis**

Defendant moves the Court to reconsider two parts of the Opinion: 1) the Court's ruling that § 301 does not preempt Plaintiffs' state law claim; and 2) the Court's ruling that genuine issues of material fact exist as to the merits of Plaintiffs' intentional interference with a contract claim. (Def. Mot. Recons. p. 5, 8, doc. # 108.) Although Defendant does not explicitly say so, it is clear that Defendant contends that reconsideration is necessary to correct a clear error or to prevent manifest injustice.

    **1.    Section 301 Preemption**

Defendant first argues that the Court committed a clear error when it held that there was no dispute as to DSI's breach of the PCA and thus no § 301 preemption. (Id. p. 5.) Defendant states that it denied Plaintiffs' allegations of DSI's breach of the PCA in its Answer to Plaintiff's Second Amended Complaint, and then argues that this denial placed the burden on Plaintiffs to establish the elements of their intentional interference with a contract claim, one of which is breach of the PCA. Defendant then argues that Plaintiffs cannot establish three of the elements of a claim for breach of the PCA (performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff), and thus that Plaintiffs cannot establish their intentional interference with a contract claim without interpreting the PCA's terms, which Defendant argues means that Plaintiffs' claim is preempted. (Id. p. 5-7.)

Plaintiffs respond by arguing, first, that Defendant's arguments here simply rehash arguments already made in Defendant's initial summary judgment motion, and that motions for reconsideration are inappropriate when they simply ask the Court to change its mind. (Pl. Resp. p.

4

3, doc. # 117.)  Second, Plaintiffs argue that despite Defendant's contentions, Defendant has never expressly defended on the grounds that DSI did not breach the PCA, that DSI itself conceded its obligations under the PCA, and that the meaning of the PCA's terms are indeed undisputed.  (Id. p. 4-5.)

The Court agrees with Plaintiffs.  Defendant, along with American Capital Strategies, Ltd., raised many of these same arguments in their intial summary judgment motions, and for the same reasons previously discussed in the Opinion the Court rejects Defendant's arguments.  Although Defendant did indeed generally deny Plaintiffs' allegations, Defendant did not actively defend on this ground and there can be no serious dispute regarding DSI's breach of the PCA.  DSI's CEO, Robert Sharp, testified at his deposition that the PCA was breached because DSI did not have sufficient funds to distribute the severance pay (Sharp Dep. p. 82, Pl. Resp. to Mot. Summ. J. ex. 4, doc. # 94-20), and there is no evidence whatsoever in the record that DSI disputed its obligation to pay the severance pay or contended that DSI's employees were ineligible to receive the severance pay for any reason.  There is absolutely no evidence to support Defendant's contention that DSI's employees did not perform under the PCA, and DSI clearly breached the PCA by not distributing the severance pay.  Defendant is correct that the PCA will have to be consulted to determine Plaintiffs' damages, but the Supreme Court clearly stated in Lingle that "[a] collective-bargaining agreement may . . . contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled[]" without implicating § 301 preemption.  486 U.S. at 413 n. 12.  The Court did not commit a clear error when it held that § 301 did not preempt Plaintiffs' claim, and the Court declines to reconsider its decision on this issue.

5

## 2. Plaintiffs' Intentional Interference with a Contract Claim

Second, Defendant argues that there is no evidence to support Plaintiffs' intentional interference with a contract claim and that the Court erred when it held that genuine issues of material fact, particularly with regard to the issue of justification, precluded summary judgment for Defendant on the merits of Plaintiffs' claim. (Def. Mot. Recons. p. 8-13, doc. # 108.) Defendant contends that no reasonable jury could infer that it approved the PCA's terms and thereafter withheld without justification the funding for the severance pay, because there is no admissible evidence upon which to base this inference. (Id. p. 9-10.) Plaintiffs respond by arguing that Defendant is simply disagreeing with the Court's interpretation of the facts and that record evidence does support the Court's ruling that genuine issues of material fact preclude summary judgment. (Pl. Resp. p. 7-9, doc. # 117.)

Again, the Court agrees with Plaintiffs. The Court addressed Defendant's arguments in its Opinion denying summary judgment, and Defendant has not identified any new evidence or a clear error. The statements made by Dallas Sells, Plaintiffs' representative during the PCA negotiations, that he spoke to one of Defendant's representatives during the PCA negotiations are the admissible evidence that would support an inference that Defendant agreed to the PCA's terms. Although Defendant is quite correct that phone records and other evidence would tend to undermine Sells' credibility, that is an issue for the jury to decide, not the Court. If a jury credited Sells' testimony, the jury could combine that finding of fact with the facts, established by Plaintiffs in desposition testimony, that DSI was in a precarious financial position and that Defendant controlled all of DSI's finances to infer that Defendant approved the PCA and then unjustifiably refused to fund the severance pay.

Defendant also argues that the Court improperly relied on In re Knickerbocker, 827 F.2d 281 (8th Cir. 1987), because Defendant argues that it is distinguishable. Knickerbocker involved a situation in which a bank initially agreed to apply the proceeds from the sale of the plaintiff's corn to plaintiff's outstanding land lease contracts, but then broke that agreement, causing the plaintiff to breach his lease. 827 F.2d at 284-86. Plaintiff's testimony at trial concerning the bank's agreement and conduct provided the main evidentiary support for his claims. Defendant states that Knickerbocker is distinguishable because the plaintiff in that case presented "actual affirmative evidence," as opposed to Plaintiffs in this case. Defendant is again relying on its argument that Sells' testimony would be entirely unbelievable due to the phone records tending to impeach his testimony. But as the Court already pointed out, that is an issue of witness credibility that is properly reserved for the jury's determination. If the jury credited Sells' testimony, that would be "affirmative evidence" of the same character as existed in Knickerbocker. Knickerbocker is not *per se* distinguishable as Defendant argues, and it was not clearly erroneous for the Court to rely on that case. There is no clear error or manifest injustice in the Opinion, and the Court declines to reconsider its ruling. Defendant's Motion for Reconsideration (doc. # 108) is **DENIED**.

### III.     Motion to Certify

#### A.     Applicable Legal Standard

Ordinarily, an appeal may only be taken following a final judgment. See 28 U.S.C. § 1291. However, limited exceptions exist. One of these exceptions provides that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).  "Exceptional circumstances must exist . . . before leave is granted for an interlocutory appeal," W. Tenn. Chapter of Associated Builders and Contractors, Inc. v. City of Memphis, 138 F.Supp.2d 1015, 1018 (W.D. Tenn. 2000), and the decision lies within the discretion of the district court.  To certify an issue or order for an interlocutory appeal under § 1292(b), the Court must be satisfied that "(1) the order involves a controlling question of law, (2) a substantial ground for difference of opinion exists regarding the correctness of the decision, and (3) an immediate appeal may materially advance the ultimate termination of the litigation."  In re City of Memphis, 293 F.3d 345, 350 (6th Cir. 2002).  If this Court certifies an issue for an interlocutory appeal, the Sixth Circuit also has discretion over whether to hear the appeal, see 28 U.S.C. § 1292(b), and Defendant would bear "the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978).

**B.  Analysis**

Defendant asks the Court to certify the issues of whether § 301 preempts Plaintiffs' claim, and whether Defendant's conduct was justified, for an interlocutory appeal to the Sixth Circuit.  (Def. Mot. Recons. p. 3-4, doc. # 108.)  Defendant argues that these issues are controlling questions of law because they could materially affect the outcome of the case, citing In re City of Memphis, 293 F.3d at 351, there are substantial grounds for a difference of opinion on the issues because of the uncertain state of Sixth Circuit law regarding § 301 preemption of Ohio intentional interference with a contract claims, and because an immediate appeal could lead to the Sixth Circuit reversing the Opinion, which would terminate Plaintiffs' case.  (Def. Mot. Recons. p. 13-17, doc. # 108.)  Plaintiffs respond by arguing first that the question of justification is a factual issue, not a legal

8

issue, and is not an appropriate issue for an interlocutory appeal.  Plaintiffs further argue that there are no substantial grounds on which to disagree with the Court's Opinion because it followed clear Supreme Court precedent, and that certifying these issues would result in undue delay because of the time involved in having the Sixth Circuit review these issues.  (Pl. Resp. p. 10-11, doc. #117).

The Court declines to certify these issues for an interlocutory appeal because an appeal would not materially advance the ultimate termination of this litigation.  Even assuming that the issues Defendant requests be certified are controlling issues of law and that substantial grounds for a difference of opinion exist, any benefits that may arise from allowing an interlocutory appeal are greatly diminished by the delay an appeal would create.  Plaintiffs began this action on October 30, 2003.  After a long period of discovery and extensive motion practice, this case is finally set for trial on November 3, 2008 - 5 years after Plaintiffs filed their initial complaint.  Aside from various pretrial issues such as motions in limine, this case is ready to go to what Plaintiffs say will be a short, two or three day trial.  Certifying these issues will only lead to further delay.  There is no guarantee that the Sixth Circuit will even decide whether or not to accept the appeal by November 3, and there is also no guarantee that the Sixth Circuit would ultimately decide to accept the appeal. One commentator notes that, on average, district courts nationwide only certify approximately 100 cases a year, and that the circuit courts only accept about half of those cases.  WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3929 (2d ed. 1996).  Should the Sixth Circuit deny to hear the appeal, it will only result in further delaying the trial date.  Even if the Sixth Circuit decided to accept the appeal, it would most likely take at least a year to get a decision that, if it affirmed this Court's Opinion, would put the parties right back into the same position they are currently in, only years later in the litigation.

Proceeding to trial as scheduled is the course of action that will do the most to materially advance the ultimate termination of this litigation. Trial is scheduled for November 3, less than four months from now. Plaintiffs state that the trial will be brief, and will not involve an inordinate amount of time and effort. Defendant, understandably, does not want to stand trial because Defendant feels that it is not liable on Plaintiffs claim, but preemption and justification defenses do not create a right to not stand trial, unlike immunity defenses. Defendant will not be unduly prejudiced by litigating Plaintiffs' claims in the courtroom and then appealing the preemption and justification issues after the entry of a final judgment. Proceeding to trial and entering a final judgment in this case will allow the entire case and all issues involved therein to be appealed in the ordinary course of the litigation, which will allow the Sixth Circuit to decide all the issues on a complete record. This course of action is greatly preferable to allowing an interlocutory appeal this close to trial and raising the possibility of piecemeal litigation. The Court finds that certifying these issues for an interlocutory appeal would not materially advance the ultimate termination of the litigation, see 28 U.S.C. § 1292(b), and Defendant's Motion for Certification (doc. # 108) is **DENIED**.

**IT IS SO ORDERED**.

Date: June 19, 2008              /s/ **John D. Holschuh**
                                 John D. Holschuh, Judge
                                 United States District Court